UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                   Chapter 13

BETTIE JEAN SANDERS                          Case No: 07-45689-CEC
aka BETTY J SANDERS
aka NZINGHA SANDERS,
                        Debtor.
-------------------------------------------------------x

In re:                                                   Chapter 13

BETTIE JEAN SANDERS                          Case No: 08-47128-CEC
aka BETTY J SANDERS
aka NZINGHA SANDERS,
                        Debtor.
-------------------------------------------------------x


<u>DECISION</u>



APPEARANCES:

Allan B. Mendelsohn                          Wilfred A. Callender, Esq.
Zavatsky, Mendelsohn, & Levy, LLP            2809 Church Ave.
P.O. Box 510                                 Brooklyn, New York 11226
33 Queens Street                             Attorney for Debtor
Syosset, NY 11791-0510
Attorneys for RSL Holdings, LLC



CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motions of Bettie Jean Sanders (the "Debtor"), the debtor in the above-captioned cases, for reconsideration of an order entered on April 4, 2008 granting RSL Holdings, LLC ("RSL") relief from the automatic stay pursuant to § 362 of the Bankruptcy Code[1] to continue an eviction proceeding against the Debtor and to obtain possession of the Debtor's residence, a house located at 1254 Broadway, also known as 1060 Green Avenue, Brooklyn, NY 11221 (the "Property").  The Debtor also seeks the continuation of the stay to prevent RSL from evicting her from the Property, and a permanent injunction and restraining order preventing Steven Weintraub, Esq., as an agent of RSL, from entering the Property.  Lastly, the Debtor seeks to reopen the record to introduce additional evidence in connection with her reconsideration motions, and seeks "a Stay until the District Attorney and the Office of the Inspector General have completed their investigation of this matter and the numerous violations of the Foreclosure Procedural laws by the law firm of Knuckles & Kominiski [sic], P.C."

Also before the Court is RSL's motion for relief from the automatic stay with prejudice for a period of one year to allow RSL to complete the eviction of the Debtor and to obtain possession of the Property.

For the following reasons, the Debtor's motions are denied, and RSL's motion is granted.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G) and 1334 and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusion of law to the extent required by the Federal Rule of Bankruptcy Procedure 7052.

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, Title 11 U.S.C.

<u>Facts</u>

The following facts are undisputed, or are matters of which this Court may take judicial notice.

On October 19, 2007, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code (the "Prior Case"). This case was the Debtor's fifth since 2003.[2]

On November 2, 2007, RSL filed a motion for relief from the automatic stay imposed by § 362 to allow it to continue an eviction proceeding against the Debtor and to obtain possession of the Property (the "Prior Case Motion"). RSL asserted that it was the owner of the Property pursuant to a foreclosure sale that occurred on July 1, 2004, during the period between the dismissal of the Debtor's third and the commencement of her fourth case. The Debtor opposed the motion, arguing that a foreclosure never took place.

An evidentiary hearing was held on RSL's motion, during which RSL introduced evidence consisting of a Memorandum of Sale dated July 1, 2004 signed by Vincent Pizzuto, the original referee appointed by the Judgment of Foreclosure and Sale entered in Supreme Court, Kings County on April 14, 2003 (the "Foreclosure Judgment"), and Shmuel Tabibov, a representative of MRS Properties, LLC ("MRS"). Also introduced was a Referee's Report of Sale dated February 26, 2007, signed by Manuel Romero, the successor referee, stating that Mr. Pizzuto, after giving the necessary notice and publication, sold the Property at the foot of the courthouse steps at 360 Adams Street in Brooklyn, NY on July 1, 2004, that MRS was the

---

[2] The first, Case No. 03-17283, was filed on June 4, 2003, and was dismissed on August 13, 2003. The second, Case No. 03-23549, was filed on October 16, 2003, and was dismissed on February 9, 2004. The third, Case No. 04-15000, was filed on April 8, 2004, was dismissed on May 14, 2004, and the Debtor was prohibited from filing a bankruptcy case for one year from the date of the dismissal order. The fourth, Case No. 05-20733, was filed on July 5, 2005, was dismissed on October 3, 2005, and the Debtor was prohibited from filing another Chapter 13 petition for a period of 180 days from the entry of the dismissal order.

successful bidder at $386,000, and that MRS assigned its bid to Preferred Acquisitions, LLC, ("Preferred Acquisitions") an assignee of the original mortgagee, American Business Credit, Inc. ("ABC").  RSL also submitted into evidence a Referee's Deed, dated February 26, 2007, executed by Mr. Romero, as referee, transferring the Property to Preferred Acquisitions; a deed dated March 12, 2007, signed by Preferred Acquisitions, transferring the Property to MVR Properties, LLC ("MVR"); and a deed dated March 29, 2007 transferring the Property from MVR to RSL.

On April 4, 2008, based upon the documentary evidence and the testimony of the Debtor and Rafael Tabibov, a member of MRS, the Court issued a decision determining that a foreclosure sale of the Property occurred on July 1, 2004, and concluding that, as a result, the Debtor does not have an interest in the Property.  On that same date, for the reasons stated in the decision, the Court issued an order granting RSL relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) (the "Lift Stay Order").  The Lift Stay Order also provided RSL with prospective relief "so that any future bankruptcy filings by the [D]ebtor within 180 days from the date of [that] order shall not act as a stay with respect to RSL's attempt to obtain possession of the Property."  (Order dated April 4, 2008, Case No. 07-45689-CEC, Docket # 25.)  The Debtor did not appeal the Lift Stay Order.

On May 15, 2008, the Prior Case was dismissed upon the motion of the chapter 13 trustee because the Debtor did not have any disposable income and because she failed to propose a feasible chapter 13 plan.

On October 23, 2008, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code (the "Current Case"), commencing her sixth bankruptcy case since 2003.

On November 6, 2008, RSL filed the instant motion for relief from the automatic stay with prejudice for one year to permit the completion of the Debtor's eviction and to obtain possession of the Property.

On December 5, 2008, the Debtor filed opposition to RSL's motion and sought reconsideration of the Lift Stay Order.  RSL filed opposition to the Debtor's motion for reconsideration.

On February 19, 2009, the Debtor filed a motion in the Prior Case for reconsideration of the Lift Stay Order, and also sought a permanent injunction and a restraining order preventing Mr. Weintraub from continuing his efforts to evict the Debtor on behalf of RSL.

On February 23, 2009, the Debtor filed a motion in the Current Case for reconsideration of the Lift Stay Order, and also sought a permanent injunction and a restraining order preventing Mr. Weintraub from continuing his efforts to evict the Debtor on behalf of RSL.

On May 27, 2009, an evidentiary hearing was held with respect to both of the Debtor's motions for reconsideration, and on RSL's motion for relief from the automatic stay in the Current Case.  At the conclusion of the hearing, the record was closed and the Court reserved decision on the motions.

On June 4, 2009, the Debtor filed a letter requesting an extension of time to allow Mr. Romero to respond to the Debtor's subpoena.  On June 25, 2009, the Court denied the Debtor's request because the evidentiary hearing was held and the record was closed, and because the Debtor had ample opportunity to obtain discovery on the matters at issue.

On July 2, 2009, the Debtor filed a motion seeking to reopen the record and to introduce new evidence with respect to her reconsideration motions.  The Debtor also seeks "a Stay until

the District Attorney and the Office of the Inspector General have completed their investigation

of this matter and the numerous violations of the Foreclosure Procedural laws by the law firm of

Knuckles & Kominiski [sic], P.C." RSL opposed this motion. A hearing was held on July 14,

2009, at the conclusion of which this Court reserved decision on the Debtor's motion to reopen

the record.

Discussion

A.    The Debtor's motions to vacate the Lift Stay Order, and to reopen the record, are denied.

The Debtor's motion must be evaluated pursuant to Rule 60 of the Federal Rules of Civil

Procedure ("Rules")[3] made applicable in bankruptcy cases by Bankruptcy Rule 9024. Rule 60

provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.
>
> *    *    *
>
> A motion under Rule 60(b) must be made within a reasonable time -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Fed. R. Civ. P. 60 (b), (c)(1).

---

[3]The Debtor states that her motion for reconsideration is made "in accordance with Bankruptcy Rule 3008." However, Bankruptcy Rule 3008 relates to the reconsideration of an order allowing or disallowing a claim against the estate, not to the reconsideration of an order lifting the automatic stay, and is thus inapplicable here. Fed. R. Bankr. P. 3008.

At the outset, it must be noted that the Debtor has not sought to vacate the order dismissing the Prior Case, nor does there appear to be a reason to do so.  It has been held that, once a bankruptcy case is dismissed, a bankruptcy court does not have jurisdiction to grant relief to a debtor affecting a related proceeding pending in state court, such as RSL's pending eviction proceeding against the Debtor in state court.  See In re Kaplun, No. 05-24528, 2006 WL 4455778, at *3 (Bankr. E.D.N.Y. Aug. 23, 2006) (bankruptcy court denied debtor's motion to instruct a state court "how to interpret or apply" an order lifting the automatic stay after the bankruptcy case was dismissed); In re Garnett, 303 B.R. 274, 279 (E.D.N.Y. 2003) (bankruptcy court lacked subject matter jurisdiction to enjoin a state court foreclosure action after the bankruptcy case was dismissed).

On the other hand, it has also been held that, after a bankruptcy case is dismissed, a bankruptcy court retains jurisdiction to vacate an order issued during the pendency of the bankruptcy case, so long as "new relief independent of the prior rulings" is not being granted.  In re Johnson, No. 04-52265, 2008 WL 878925, at *4 (Bankr. N.D. Cal. Apr. 1, 2008) ("[R]econsideration by this Court of its inherent authority to enter [a provision in a prior order] is a proper exercise of this Court's jurisdiction - even after Debtor's bankruptcy case has been dismissed.").  Even if this Court may vacate the Lift Stay Order without vacating the dismissal order in the Prior Case, the Debtor's motion must be denied, because she has not met her burden under Rule 60(b).

The Debtor's arguments in support of vacating the Lift Stay Order fall under Rule 60(b)(2), (3) and (6).  "To prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that he was justifiably ignorant of the newly discovered evidence despite due

diligence." State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 178 (2d

Cir. 2004) (citing United States v. Int'l Brotherhood of Teamsters, 247 F.3d 370, 392 (2d Cir.

2001).  A party seeking relief under Rule 60(b)(3) "must show that the conduct complained of

prevented the moving party from fully and fairly presenting his case," Inversiones Errazuriz

Limitada, 374 F.3d at 176, by showing "clear and convincing evidence of material

misrepresentations," Fleming v. N.Y. Univ., 865 F.2d 478, 484 (2d Cir. 1989).  A party may not

use Rule 60(b)(3) to relitigate the merits of the order from which he seeks relief.  Fleming, 865

F.2d at 484.  Lastly, relief pursuant to Rule 60(b)(6) may only be granted under extraordinary or

exceptional circumstances.  Grace v. Bank Leumi Trust Co., 443 F.3d 180, 190 n. 8 (2d Cir.

2006); Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), aff'd, 501 U.S. 115 (1991).  This

subsection is properly invoked only when the "asserted grounds for relief are not recognized in

clauses (1)-(5) of the Rule." In re Calpine Corp., 363 B.R. 709, 711 (Bankr. S.D.N.Y. 2007).

        The Debtor argues that the Foreclosure Judgment was erroneously rendered for a number

of reasons, and therefore, because the Foreclosure Judgment is the basis for the sale, and the sale

is the basis of the Lift Stay Order, the Lift Stay Order must be vacated.  First, she argues that she

never received notice of the foreclosure action.  Second, she argues that ABC, the original

mortgagee, never commenced a foreclosure action against her, and that the action that resulted in

the Foreclosure Judgment was commenced by a law firm, Knuckles & Komosinski, PC

("Knuckles & Komosinski") purportedly on behalf of ABC without ABC's authorization.  Third,

she argues that ABC was never licensed to operate as a bank in New York, making the initial

mortgage illegal, and the subsequent foreclosure action illegal.  Finally, she argues that she was

not in default of her mortgage obligations.

The <u>Rooker-Feldman</u> doctrine prevents this Court from reviewing the validity of the

Foreclosure Judgment.  The <u>Rooker-Feldman</u> doctrine bars "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  The <u>Rooker-</u>

<u>Feldman</u> doctrine "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance,

appeals from state court decisions."  <u>Book v. Mortgage Elec. Registration Sys.</u>, 608 F. Supp. 2d

277, 288 (D. Conn. 2009) (<u>citing</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 84

(2d Cir. 2005)).

However, the <u>Rooker-Feldman</u> doctrine does not divest the federal court of jurisdiction of

an "independent claim based on an injury not 'caused by' the state-court judgment, even if the

claim denies a legal conclusion of the state court."  <u>Estate of Keys v. Union Planters Bank, N.A.</u>,

578 F. Supp. 2d 629, 637 (S.D.N.Y. 2008).  "[T]he applicability of the *Rooker-Feldman* doctrine

turns not on the *similarity* between a party's state-court and federal-court claims (which is,

generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship*

between the state-court judgment and the injury of which the party complains in federal court."

<u>McKithen v. Brown</u>, 481 F.3d 89, 97-98 (2d Cir. 2007).  "[A] party is not complaining of an

injury 'caused by' a state-court judgment when the exact injury of which the party complains in

federal court existed *prior* in time to the state-court proceedings, and so could not have been

'caused by' those proceedings."  <u>Id.</u> at 98.

 For instance, it has been held that the <u>Rooker-Feldman</u> doctrine was inapplicable when a

party who lost in a state court foreclosure action asserted claims of conversion and intentional

inflication of emotional distress, because those claims alleged fraud in the procurement of the

foreclosure judgment, and because the party did not seek to vacate the foreclosure judgment, but

sought the remedy of money damages.  Goddard v. Citibank, NA, No. 04CV5317, 2006 WL

842925, at *4 (E.D.N.Y. Mar. 27, 2006).  However, the Rooker-Feldman doctrine was held to

apply when a party sought to set aside a transfer of a house pursuant to a judgment of foreclosure,

even though the party argued that the judgment of foreclosure was procured by fraud.  Keys, 578

F. Supp. 2d at 637.

   The Rooker-Feldman doctrine applies in this case because the Debtor lost in the state

court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced

the Prior Case and the Current Case, and the Debtor seeks this Court's review of the Foreclosure

Judgment in the context of her motion to vacate the Lift Stay Order.  The injuries complained of,

i.e., the foreclosure sale and the subsequent purchase by RSL, were "caused by" the Foreclosure

Judgment because "the foreclosure would not have occurred but-for the judgment" in state court.

Id. at 637.  Accordingly, the Rooker-Feldman doctrine does not permit this court to disregard the

Foreclosure Judgment.  See Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL

1787710, at *4 (S.D.N.Y. June 23, 2009) (comparing the loss of an automobile to a loss of a

home, and stating that "[c]ourts in this Circuit have consistently held that a plaintiff who lost

possession of his home in a state court foreclosure proceeding is barred by the *Rooker-Feldman*

doctrine from attacking the state court judgment in federal district court"); Goddard, 2006 WL

842925, at *4 ("To the extent that Plaintiff asks that this court find the Judgment of Foreclosure

to be invalid because her mortgage payments were up to date . . . I find that this claim is barred

by the *Rooker-Feldman* doctrine.").

Even if this Court had jurisdiction to review the validity of the Foreclosure Judgment, the Debtor's arguments would be barred by res judicata. "Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction." Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999); see also Brown v. Felsen, 442 U.S. 127, 131 (1979); Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000). This doctrine "ensures the finality of decisions." Brown, 442 U.S. at 131. To determine the preclusive effect of a state court decision, a federal court must apply the standard used by the state in which the decision was rendered. 28 U.S.C. § 1738; Exxon Mobil, 544 U.S. at 293; In re Fischer, 252 B.R. 603, 613 (Bankr. E.D.N.Y. 2000). Under New York's doctrine of res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002). "This doctrine also applies to defenses that could have been litigated, including defenses to a foreclosure." Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008). Although this doctrine requires "an identicality, or privity, of the plaintiffs and defendants in the initial and subsequent actions," this requirement "is not strictly imposed where the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of res judicata would not alter this conclusion."[4] Pharr v. Evergreen Garden, Inc., 123 Fed. Appx. 420, 424 (2d Cir. 2005). Therefore, because the Debtor was a party to the state court foreclosure

---

[4] The requirement of privity may be satisfied because RSL owns the Property as a successor in interest to ABC's assignee, Preferred Acquisitions. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277 (1970) (privity "includes those who are successors to a property interest"); see also Pharr, 123 Fed. Appx. at 425 (quoting Watts, 27 N.Y.2d at 277).

action, and because she could have raised these defenses in that action, she is barred from asserting them at this juncture.

Some cases have held that, notwithstanding the doctrine of res judicata, a New York state court's judgment is not given preclusive effect by the federal court if the judgment was procured by collusion or fraud.  See Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987), cert. denied, 484 U.S. 1007 (1988); Goddard, 2006 WL 842925, at *7; In re Slater, 200 B.R. 491, 495 (E.D.N.Y. 1996); County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1387, 1393 (E.D.N.Y. 1989).  This is because New York law permits collateral attacks on judgments obtained by extrinsic, as opposed to intrinsic, fraud.  Slater, 200 B.R. at 496 (citing Altman v. Altman, 542 N.Y.S.2d 7, 9 (N.Y. App. Div. 1989)).  Extrinsic fraud involves the parties' "opportunity to have a full and fair hearing," while intrinsic fraud, on the other hand, involves the "underlying issue in the original lawsuit."  Id.  Other cases have held that a judgment is still given preclusive effect even it was obtained by fraud.  See Gray, 2009 WL 1787710, at *6; Alaimo v. Gen. Motors Corp., No. 07-CV-7624, 2008 WL 4695026, at *6 (S.D.N.Y. Oct. 20, 2008); Keys, 578 F. Supp. 2d at 635-636; Marshall v. Grant, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007). However, these cases do not address the distinction between extrinsic and intrinsic fraud, and the fraudulent acts alleged in those cases appear to constitute intrinsic fraud.

It has also been held that the Rooker-Feldman doctrine does not prevent the collateral attack on a state court judgment which is alleged to have been procured through fraud, if the claim now asserted is independent from the claim that the state court judgment was erroneous. See Marshall, 521 F. Supp. 2d at 245; Goddard, 2006 WL 842925, at *5-6; Mac Pherson v. State St. Bank & Trust Co., 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006).

No extrinsic fraud is alleged in the procurement of the Foreclosure Judgment, such as, for example, threats of physical harm, or the misrepresentation that the action would be discontinued. See Slater, 200 B.R. at 496 ("[T]he [d]ebtor's allegations that her brother physically assaulted her and threatened her life before and during the trial . . . does constitute extrinsic fraud sufficient to attack the state court judgment."); Tamimi v. Tamimi, 328 N.Y.S.2d 477, 484 (N.Y. App. Div. 1972) ("Upon the undisputed testimony in this case the [party] was 'robbed' of her opportunity to make her defense in the Thai court by reason of the [other party]'s fraud and misrepresentation that he would discontinue the action which he had instituted against her."). Nor is any claim asserted by the Debtor separate from the claim that the Foreclosure Judgment was erroneous. Cf. Goddard, 2006 WL 842925, at *4-6 (aside from the claim that a state court judgment was erroneously rendered, which was barred by the Rooker-Feldman doctrine, the party also asserted claims of conversion and intentional infliction of emotional distress, which were not barred by the Rooker-Feldman doctrine).

However, even if the doctrines of Rooker-Feldman and res judicata do not apply, the Debtor has not shown that the Foreclosure Judgment was obtained by fraud, or that, even if it was, relief pursuant to Rule 60(b) is warranted. See Tyson v. City of New York, 81 Fed. Appx. 398, 400 (2d Cir. 2003) ("[R]elief [under Rule 60(b)(3)] is only available if the moving party establishes by clear and convincing evidence that the opposing party engaged in fraud or other misconduct."); Fleming, 865 F.2d at 484 ("[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations.").

In support of her argument that the Foreclosure Judgment was fraudulently obtained, the Debtor attached to her motion papers as Exhibit D a letter dated April 7, 2008, purportedly from

the chapter 7 trustee of the bankruptcy estate of ABC.  In the letter, the trustee stated that he has

no record of the foreclosure action, or of any representation of ABC by Knuckles & Komosinski.

First of all, the debtor has submitted no evidence of the authenticity of this document, nor any

evidence that would remove it from the category of inadmissible hearsay.  Fed. R. Evid. 802,

803, 901.  Moreover, even if a proper foundation were laid for the admission of this document

into evidence, the fact that the chapter 7 trustee of ABC's bankruptcy case states in 2008 that

ABC has no record of a foreclosure action, which was commenced seven years earlier, and where

the foreclosure sale took place four years earlier, does not support a finding that the action was

never properly commenced in 2001, or that Knuckles & Komosinski commenced the foreclosure

proceeding without authorization from ABC.

Also attached as part of Exhibit D to the Debtor's motion papers was an undated letter,

purportedly from ABC to the Debtor, stating that it "can find no records of our legal department

initiating a foreclosure action" and that her mortgage was "reinstated."  However, this letter is

insufficient to support a conclusion that the foreclosure judgment was obtained by fraud.  This

letter too is unauthenticated, and its contents are hearsay.  The fact that the letter is undated

further undermines its evidentiary value.  Even if the statement it contains is accepted as true, it

is impossible to determine whether the letter was written before or after the foreclosure action

was commenced; it is possible that the letter predates the foreclosure action, and that the debtor

subsequently defaulted.

Furthermore, the Debtor's allegation that the foreclosure action was not authorized by

ABC does not constitute a claim that Knuckles & Komosinski engaged in conduct that deprived

the Debtor from an opportunity to have a full and fair trial in the foreclosure action.  These

contentions could have been raised in the foreclosure action, and in subsequent proceedings which have been held in state court seeking relief from the Foreclosure Judgment.  Therefore, this allegation, even if true, constitutes an allegation of intrinsic fraud, as opposed to extrinsic fraud, and is not sufficient to collaterally attack the Foreclosure Judgment.  See Slater, 200 B.R. at 496.

The Debtor's argument that the underlying mortgage was illegal and that the foreclosure action was improperly commenced because ABC was not licensed to operate as a bank must also be rejected as grounds for collateral attack of the Foreclosure Judgment.  These allegations, even if true, do not constitute any conduct that would have prevented the Debtor from fairly and fully litigating the foreclosure action; rather, these arguments go to the merits of the foreclosure action, and are insufficient to permit collateral attack of the Foreclosure Judgment.  See Gray, 2009 WL 1787710, at *6 n.2 ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*."); Slater, 200 B.R. at 495 (debtor's argument in bankruptcy court that her signature on a deed, which was the basis for a foreclosure judgment, was fraudulently obtained was insufficient to collaterally attack the foreclosure judgment because the argument alleged intrinsic fraud); Bell v. Town Bd. of the Town of Pawling, 537 N.Y.S.2d 214, 215 (N.Y. App. Div. 1989) ("A challenger will not prevail by merely showing fraud in the underlying transaction but must show fraud in the very means by which the judgment was procured.").

In short, the Debtor has not established any basis for denying the Foreclosure Judgment preclusive effect.  However, even if the doctrines of Rooker-Feldman and res judicata did not prevent this Court from entertaining a collateral attack on the Foreclosure Judgment, the

proffered evidence does not in any event provide grounds under Rule 60(b) for vacating the Lift

Stay Order.  Relief under Rule 60(b)(2) is not warranted because the Debtor has not given any

reason why the information contained in the letters submitted by her as evidence "with

reasonable diligence, could not have been discovered in time to move for a new trial [with

respect to the Lift Stay Order] under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  Moreover, these

letters do not shown the existence of any extraordinary circumstances warranting vacatur under

Rule 60(b)(6).  Most importantly, these letters do not establish that RSL, or any other party,

engaged in fraud in obtaining the Lift Stay Order.

Additionally, the Debtor's allegation that Knuckles & Komosinski misrepresented to the

state court that the Debtor was in default of her mortgage obligations is insufficient to permit

collateral attack of the Foreclosure Judgment.  "Bankruptcy proceedings may not be used to re-

litigate issues already resolved in a court of competent jurisdiction."  Kelleran, 825 F.2d at 695.

The Debtor's argument that she was current on her mortgage obligations could have been made in

state court.  Moreover, the allegation that Knuckles & Komosinski misrepresented to the state

court that she was in default is one that alleges intrinsic fraud.  See Domino Media, Inc. v.

Kranis, 9 F. Supp. 2d 374, 388-389 (S.D.N.Y. 1998) (allegations of perjury in New York state

court action is insufficient to collaterally attack the state court judgment); Alleghany Corp. v.

Kirby, 218 F. Supp. 164, 184 (S.D.N.Y. 1963) ("If [a party] had testified at the hearing before the

Referee and had testified falsely, or had produced false documents, the fraud would be

denominated as intrinsic and would not be subject to collateral attack.").  Furthermore, the

Debtor has not submitted any evidence that she was current on her mortgage obligations.

The Debtor's claim that she was never served in the foreclosure action, however, would, if true, potentially constitute extrinsic fraud in the procurement of the Foreclosure Judgment, because such a fact could support the conclusion that she was denied the opportunity to fully and fairly defend the foreclosure action.  See In re Gates, 187 B.R. 426, 423-433 (Bankr. N.D.N.Y. 1995) (finding that Pennsylvania judgment was not procured by extrinsic fraud because the defendant was properly served); Chenu v. Bd. of Trs., 212 N.Y.S.2d 818, 820 (N.Y. App. Div. 1961) ("The Florida judgment could be nullified by collateral attack in this State if there had been . . . improper service upon defendant.").  However, no evidence was introduced supporting her claim that she was not served in the foreclosure action, and her bare assertion is insufficient to rebut the presumption that she was served.  Mortgage Elec. Registration Sys., Inc. v. Schotter, 857 N.Y.S.2d 592, 594 (N.Y. App. Div. 2008) (conclusory allegations of non-receipt are insufficient to rebut the presumption of proper service where an affidavit of service is filed).  It should be noted that the Foreclosure Judgment specifically recited that the Debtor was "duly served . . . and/or [has] duly appeared" and that proof of service of the summons and complaint was filed.  (Foreclosure Judgment 1.)

For these reasons, this Court concludes that the Foreclosure Judgment is res judicata under New York law, and is not subject to collateral attack.  Additionally, even if the Debtor could establish that the Rooker-Feldman doctrine, and res judicata, did not preclude collateral attack on the Foreclosure Judgment, there would still be no basis to vacate the Lift Stay Order. In order to obtain relief from the Lift Stay Order under Rule 60(b), the Debtor would be required to establish the existence of a fraud on this Court in obtaining the Lift Stay Order, or some other grounds under Rule 60(b), relating to the proceedings in the Prior Case that resulted in the Lift

Stay Order.  None of the alleged misconduct of Knuckles & Komosinski in connection with the foreclosure action, if it occurred, would have operated to deny the Debtor a full and fair opportunity to present these arguments to this Court in the Prior Case; the Debtor had ample opportunity to raise all of these arguments during the trial on RSL's motion for relief from the automatic stay in the Prior Case.  See Gleason v. Jandrucko, 860 F.2d 556, 560 (2d Cir.1988) (relief under Rule 60(b) was not warranted when the movant had "ample opportunity in the prior proceeding to uncover the alleged fraud").  Moreover, in order to vacate the Lift Stay Order under Rule 60(b)(3), the alleged fraud must have been perpetrated by RSL, which was the opposing party in the Prior Case.  The Debtor does not argue that the alleged fraudulent conduct of Knuckles & Komosinski is attributable to RSL.  See Crateo, Inc. v. Intermark, Inc., 536 F.2d 862, 870 (9th Cir. 1976) ("Despite [the debtor]'s protestations of fraud in the obtaining of the Texas judgment, its Rule 60(b) motion in this case cannot be considered as falling under the third clause of that section because the . . . actions [of the adverse party in the underlying state court action] cannot be charged to any adverse party in the bankruptcy proceeding.").  Therefore, none of the Debtor's arguments that the Foreclosure Judgment was fraudulently obtained provide a basis under Rule 60(b) to vacate the Lift Stay Order.

The Debtor also asserts that the Lift Stay Order should be vacated because the sale never took place on July 1, 2004, or that the state court "aborted" and "stayed" the sale.  (Tr.[5] at 15; Debtor's Mot. for Reconsideration at ¶ 30).  However, the evidence offered by the Debtor does not support these conclusions.  As Exhibit E to her motion, the Debtor attached an order to show cause issued by the Honorable Jules Spodek on June 29, 2004, temporarily staying the transfer of

---

[5] "Tr." refers to the transcript of the evidentiary hearing held on May 27, 2009.

the deed until the return date of the order to show cause.  That order did not stay the foreclosure

sale.  Indeed, Justice Spodek specifically crossed out the paragraphs of the Debtor's proposed

order that provided for a stay of the sale.  Additionally, Exhibit F to the Debtor's motion is an

order dated July 14, 2004, issued by the Honorable Ariel Belen, after the hearing on the June 29,

2004 order to show cause which stayed the transfer of the deed until August 30, 2004, but did not

stay the foreclosure sale, which took place 14 days earlier.  There is no evidence whatsoever that

the foreclosure sale was stayed by any court.

Furthermore, the evidence submitted by the Debtor supports the conclusion that the sale

actually occurred on July 1, 2004.  The Debtor relies on the deposition testimony of Mr. Pizzuto,

the original referee in the foreclosure, to support her assertion that the sale did not occur.

However, Mr. Pizzuto testified that there was a sale of the Property, and that he took a deposit of

$39,000.  (Pizzuto Dep. Test. 4/2/09 at 10, 14.)  Mr. Pizzuto further testified that the sale did not

close and that he returned the deposit to the successful bidder, MRS.  (Pizzuto Dep. Test. 4/2/09

at 15.)  This testimony is contrary to the Debtor's assertion that the sale never took place.

Moreover, the fact that the deposit was returned is entirely consistent with this Court's prior

findings that the Property was auctioned at a foreclosure sale on July 1, 2004, and that the

winning bid of MRS was ultimately assigned to Preferred Acquisitions, an assignee of ABC, and

that the successor referee, Mr. Romero, transferred the deed to Preferred Acquisitions, and that

the Property was subsequently transferred to RSL.  Preferred Acquisitions, the mortgage holder,

was assigned the winning bid, and therefore no deposit was required after the assignment of the

bid.  See Polish Nat. Alliance v. White Eagle Hall Co., Inc., 470 N.Y.S.2d 642, 649 (N.Y. App.

Div. 1983) ("A mortgagee, which bids in the property for less than the amount due, is not required to indulge the useless act of paying itself the amount of its bid.").

The Debtor argues that RSL submitted a fraudulent Terms of Sale and Memorandum of Sale to this Court, which was relied upon by this Court in issuing the Lift Stay Order.  In support of her argument that the sale was aborted, the Debtor argues that Mr. Pizzuto testified that the signature on the Terms of Sale is not his.  (Debtor's Reply Affirmation ¶ 13.)  However, this is not an accurate characterization of Mr. Pizzuto's testimony.  Mr. Pizzuto testified that the signature on the Terms of Sale "looks like my signature, but . . . it could be anybody's signature," and that he could not state for sure whether it was his signature.  (Pizzuto Dep. Test. 4/2/09 at 34-35.)  When asked if he recalled signing a memorandum of sale, Mr. Pizzuto testified that he had no recollection of anything that transpired except with respect to occurrences that are referenced in the documents in his file.  (Pizzuto Dep. Test. 4/2/09 at 31.)  This testimony does not support the Debtor's assertion that the signatures on the Terms of Sale and Memorandum of Sale presented in the Prior Case were forged.

The Debtor has not given any reason why Mr. Pizzuto's testimony, "with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2), and therefore there is no basis in any event to vacate the Lift Stay Order under Rule 60(b)(2).  More importantly, this "new evidence" does not support the Debtor's contention that RSL engaged in fraud in obtaining the Lift Stay Order, and therefore provides no basis for vacating the Lift Stay Order under Rule 60(b)(3).  Nor does Mr. Pizzuto's testimony establish the existence of extraordinary circumstances warranting vacatur under Rule 60(b)(6).

The Debtor also argues that the foreclosure sale was not conducted in accordance with New York law.  For example, she argues that she never received notice of the sale, and that the sale was not properly advertised.  These allegations are untimely because they should have been asserted within one year after the sale.  N.Y. C.P.L.R. § 2003; N.Y. Real Prop. Acts. Law § 231(6).  Moreover, the Debtor has not provided any evidence in support of these allegations, and, even if true, such allegations are insufficient to set aside the sale under New York law.  Wells Fargo Bank Minn. v. Ray, 880 N.Y.S.2d 454, 456-457 (N.Y. Sup. Ct. 2009) ("[I]t is well settled that the failure to give proper notice of a sale . . . is a mere irregularity and not a jurisdictional defect.  Absent a showing that a substantial right of a party to participate in the sale was prejudiced, the failure to give proper notice will not require that a sale be set aside." (citations omitted)).  These allegations would not in any event provide a basis for vacating the Lift Stay Order; no reason is given why these issues could not have been raised in the Prior Case.

The Debtor argues that the referee failed to timely file of a report of sale and other documents, the mortgagor did not attend the sale or sign various documents, and that the sale was not timely consummated.  The Debtor also argues that MRS was not permitted to assign its bid to Preferred Acquisitions.  However, the Debtor has not provided any authority which would lead to the conclusion that these allegations, if true, render the sale null and void.  Furthermore, once the sale is completed, the Debtor lacks standing to enforce any of the provisions of the terms of sale, such as the time for closing.  Scheckter v. Emigrant Sav. Bank, 654 N.Y.S.2d 162, 163 (N.Y. App. Div. 1997) ("[T]here is no statutory authority which allows a mortgagor to enforce the provisions of a Terms of Sale Agreement when a foreclosure purchaser is allegedly in default.").  The Debtor also lacks standing to claim any "impropriety in the events surrounding the closing of

title which resulted in the sale of the premises" because she did not have any interest in the Property once the sale was completed on July 1, 2004.  <u>Kolkunova v. Guaranteed Home Mortgage Co.</u>, 842 N.Y.S.2d 46, 48 (N.Y. App. Div. 2007) (holding that plaintiff lacked standing after foreclosure sale to set aside the foreclosure sale and reinstate her right to redeem property based upon arguments that events surrounding the closing of the sale were improper).  Moreover, none of these arguments support vacatur of the Lift Stay Order pursuant to Rule 60(b).  No claim of newly discovered evidence or fraud is made, and no reason given why these issues could not have been used in the Prior Case.

In her latest motion, the Debtor seeks to reopen the record to introduce an affidavit of Mr. Romero.  The determination whether to reopen the record for the presentation of new evidence is within the court's discretion,  <u>DiBella v. Hopkins</u>, 403 F.3d 102, 119 (2d Cir. 2005), and in making its determination, "the court must consider (1) whether or not the moving party's failure to submit evidence was the result of its own lack of diligence; (2) the extent to which reopening the record might prejudice the nonmovant; and (3) where the interests of justice lie," <u>John v. Sotheby's, Inc.</u>, 858 F. Supp. 1283, 1288 (S.D.N.Y. 1994).  The Debtor's motions for reconsideration have been pending for, at a minimum, five months.  The Debtor had ample opportunity to seek whatever discovery she felt was necessary in order to adequately present her case, including the testimony of Mr. Romero.  The Debtor has not provided any excuse for her failure to present this evidence at the evidentiary hearing on her motions.

Furthermore, this Court notes that Mr. Romero's affidavit, in which he states that he received no funds in payment for the Property, does not support the Debtor's position that the sale of the Property did not properly close.  To the contrary, Mr. Romero's affidavit is consistent with

testimony at the evidentiary hearing in the Prior Case.  The assignee of the mortgagee, Preferred

Acquisitions, purchased the Property from the Referee.  The Report of Sale confirms this, and

states that the total amount due to the mortgagee is $493,427.95, and the winning bid was

$386,000, leaving a deficiency of $107,427.95.  Therefore, it is understandable that no money

was exchanged, as the holder of the mortgage was entitled to credit bid its claim.  Moreover, the

Debtor lacks standing to challenge alleged improprieties in the transfer of the title that occurred

after the auction sale took place.  See Kolkunova, 842 N.Y.S.2d at 48.

The Debtor has not provided any evidence that the Lift Stay Order, or the underlying

Foreclosure Judgment, was obtained by fraud, and has not established that she is entitled to relief

from the Lift Stay Order pursuant to Rule 60(b).  Accordingly, the Debtor's motion to vacate the

Lift Stay Order is denied.

B.    The Lift Stay Order is res judicata in the Current Case.

The Debtor asserts all of the arguments discussed above as grounds to deny RSL's motion

for relief from the automatic stay, and in support of her motion to extend the automatic stay.

These arguments are barred by the federal doctrine of res judicata, which parallels New York's

doctrine of res judicata.  See Marvel Characters, 310 F.3d at 286; Maharaj v. Bankamerica Corp.,

128 F.3d 94, 97 (2d Cir. 1997).  RSL and the Debtor are the same parties as in the Prior Case, the

Lift Stay Order was a final determination on the merits of RSL's motion for relief from the

automatic stay in the Prior Case, and all of the Debtor's arguments now asserted could have been

made in the Prior Case before the issuance of the Lift Stay Order.  As such, the Lift Stay Order

issued in the Prior Case, which is not vacated under Rule 60(b), is given preclusive effect in the

Current Case.  Accordingly, for reasons stated in this Court's decision in the Prior Case dated

April 4, 2008, RSL is granted relief from the automatic stay with prejudice for a period of one year, so that, in the event of any future bankruptcy filing by the Debtor or an assignee of the Debtor, the automatic stay will not apply to prevent RSL from exercising its right with respect to the Property.

Given this conclusion, this Court also denies the Debtor's request for an injunction and temporary restraining order against Mr. Weintraub, as well as her request for a stay in this case until the offices of the Inspector General and the District Attorney complete their investigation into the Debtor's allegations of wrongdoing.[6]

---

[6] Any request for an injunction and restraining order must be sought by way of adversary proceeding, and not by motion.  Fed. R. Bankr. P. 7001.  Additionally, the Debtor's exhibits in support of her assertions that an investigation is ongoing do not support a conclusion that there are pending active investigations.

<u>Conclusion</u>

For the foregoing reasons, all of the Debtor's motions are denied, and RSL's motion for relief from the automatic stay with prejudice for a period of one year is granted.  A separate order will issue.

Dated: Brooklyn, New York
      July 24, 2009

                                      ***s/Carla E. Craig***_____
                                      CARLA E. CRAIG
                                      Chief United States Bankruptcy Judge